FILED
2021 Mar-22  AM 10:45
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| SHERRY LYNN LONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:18-cv-01815-LSC |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Sherry Lynn Long, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI"), a period of disability, and Disability Insurance Benefits ("DIB").  Plaintiff timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was thirty-four years old at the time of her disability onset and forty years old at the time of the unfavorable opinion issued by the Administrative Law Judge ("ALJ").  (Tr. at 28, 30.)  She has a GED and experience as a certified nursing

assistant ("CNA").  (Tr. at 256.)  Plaintiff claims that she became disabled on January 15, 2012, due to foot surgery, a bone stimulator in her leg, depression and anxiety, bipolar disorder, rod and pins in her left elbow, pins in her right shoulder, back problems, gout in the left foot, borderline diabetes, arthritis, and high blood pressure.  (Tr. at 59-72, 189.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA").  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy

the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled.   *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   The decision depends on the medical evidence contained in the record.   *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step.   *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).   The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work.   *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   If the

plaintiff's impairment or combination of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2014. (Tr. at 13.) The ALJ further determined that Plaintiff has not engaged in SGA since January 15, 2012, the alleged onset date of her disability. (*Id.*) According to the ALJ, Plaintiff's bipolar disorder, depression disorder, anxiety disorder, disorder of major joints, degenerative disc disease, and obesity were considered severe impairments. (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1. (Tr. at 14.) The ALJ determined that Plaintiff has the following RFC:

> To perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except she can stand or walk for three hours; sit for six hours with normal breaks; occasionally climb ramps, stairs, balance, kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; can frequently stoop; can occasionally reach forward with the right upper extremity but never reach above shoulder level with the right upper extremity; can frequently reach forward and overhead with the left upper extremity; must avoid concentrated exposure to extreme cold, extreme heat, wetness and humidity; and must avoid all exposure to hazards like machinery and unprotected heights. She can perform simple tasks; maintain attention, concentration and pace for two-hour increments in an eight-hour workday; have occasional interaction with co-workers, supervisors, and the general public; whose new work assignments are gradually introduced; and will miss one to two days of work per month.

(Tr. at 17.)

Next, the ALJ obtained the testimony of a Vocational Expert ("VE") and determined at step four of the sequential evaluation process that Plaintiff could not return to her past relevant work as a certified nursing assistant because this work requires the performance of work-related activities precluded by Plaintiff's RFC. (Tr. at 28.) The ALJ concluded by stating that Plaintiff has not been under a "disability," as defined in the Social Security Act from the alleged onset date through the date of the decision. (Tr. at 29.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates

against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Long argues that the ALJ's decision should be reversed and remanded for two reasons: (1) the ALJ erred in assigning little weight to the opinion of Dr. Peggy Thornton, a consultative psychologist; and (2) the ALJ erred in evaluating her daily activities and subjective complaints of pain.

### A.      Weight to Consultative Psychologist's Opinion

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the

examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.

The opinions of a one-time examiner or of a non-examining source are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a plaintiff. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

Still, medical consultants or medical experts are highly qualified medical specialists who are experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions.  *See* 20 C.F.R. § 404.1527(e)(2)(iii), 416.927(e)(2)(iii); SSR 96-6p.  In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(e), 416.927(d).  The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC.  *See, e.g.*, 20 C.F.R. § 404.1546(c).

Dr. Thornton, a licensed psychologist at Auburn-Opelika Psychology Clinic, conducted a psychological evaluation of Plaintiff on two separate occasions – once in 2012 and again in 2015.  (Tr. at 410, 690.)  Dr. Thornton first saw Plaintiff on September 26, 2012.  (Tr.  at 410.)  When evaluating Plaintiff's mental status, Dr. Thornton observed that she was on time to her appointment, neatly dressed, "quite tearful", overweight, and fully oriented as to person, place, situation, and time.  (*Id*.) She also stated Plaintiff's speech was normal and her thought processes were logical, but her affect range was restricted and her mood was depressed.  (*Id*.)

When evaluating Plaintiff's cognitive functioning, Dr. Thornton noted she successfully added serial fours to one without difficulty, completed two of three multiplication problems, and two-of-two word problems.  (Tr. at 411.)  She successfully abstracted similarities and one of two proverbs.  (*Id*.)  Her judgment was accurate, and she knew who current presidents were, but she did not know the correct number of weeks in the year.  (*Id*.)  Plaintiff's long-term memory was intact, and she was able to recall four digits forward and three backward and remember three of three objects after about five minutes.  (*Id*.)  However, Dr. Thornton noted that Plaintiff's short-term memory was mildly impaired.  (*Id*.)

Dr. Thornton concluded at the end of the 2012 appointment that Plaintiff could manage benefits, if they were awarded, and she would be able to make

appropriate work decisions.   (Tr at 411.)   She diagnosed Plaintiff with Major Depressive Disorder, Mild, Recurrent and an Estimated Low Average Range of Intellectual Functioning.  (*Id*.)

Dr. Thornton conducted another consultative psychological evaluation on June 24, 2015.  (Tr. at 690.)  Once again, she stated that Plaintiff was on time to her appointment, neatly dressed and groomed, her speech was normal and thought processes logical, and she was fully oriented as to person, place, situation, and time. (*Id*.)  She also noted again that Plaintiff's affect range was restricted, and her mood was depressed.  (Tr. at 691.)

When evaluating Plaintiff's cognitive functioning in 2015, Dr. Thornton noted she was able to add serial fours to one without difficulty, successfully calculate two of three multiplication problems and two-of-two word problems.   (Tr. at 691.) Plaintiff's abstractions of similarities and proverbs were both accurate.  (*Id*.)  Her judgment and memory were both accurate and intact.  (*Id*.)  She knew who the president and former president were, but she did not know the number of weeks in a year.  (*Id*.)

Dr. Thornton concluded at the end of the 2015 appointment that Plaintiff would be able to manage benefits if they were awarded, but she would not be able to make appropriate work decisions.  (Tr. at 691.)  She diagnosed Plaintiff with Major

Depressive Disorder and an Estimated Average Range of Intellectual Functioning. (*Id.*)

The ALJ gave partial weight to Dr. Thornton's findings in 2012 that Plaintiff was able to make appropriate work decisions. (Tr. at 26.) The ALJ noted that 2015 examination findings from Plaintiff's treating nurse practitioner, Charlotte Bishop, supported Dr. Thornton's 2012 opinion. (Tr. at 26, 529, 541.) Ms. Bishop's psychiatric examination showed Plaintiff was anxious and depressed, with compulsive behavior and mood swings. (Tr. at 529.) However, Ms. Bishop commented that Plaintiff's two sons were causing her much pain and suffering because they would not work, kept coming back home, and talked back to her. (*Id.*) Since her increased symptoms were tied to situational stressors, this evidence undermined Plaintiff's allegations of disabling symptoms. *See Jones v. Comm'r of Soc. Sec.*, 181 F. App'x 767, 771 (11th Cir. 2006) (evidence that mental difficulties were "situational" and tied to financial and family stress support finding of no severe mental impairment). The ALJ also discussed that, at Ms. Bishop's examination, Plaintiff appeared fully oriented, with appropriate behavior, sufficient fund of knowledge, no hallucinations or suicidal ideations, and normal insight, judgment, attention span, and concentration. (Tr. at 26, 530.) However, the ALJ actually gave

Plaintiff the benefit of the doubt and found that the longitudinal medical evidence supported more mental limitations than Dr. Thornton found in 2012. (Tr. at 411.)

The ALJ gave little weight to Dr. Thornton's conflicting findings in 2015 that Plaintiff was not able to make appropriate work decisions. (Tr. at 26, 691.) The ALJ noted that Dr. Thornton's 2015 findings were not adequately supported and were inconsistent with her own prior findings, the longitudinal medical evidence, and Plaintiff's own report of daily activities. (*Id.*) *See* 20 C.F.R. §§ 404.1527(c)(3), 416.827(c)(3) (supportability).

Indeed, Dr. Thornton's psychological evaluations in 2012 and 2015 produced consistent findings but led her to reach contrary conclusions. (Tr. at 410, 690.) According to Dr. Thornton, Plaintiff was on time to her appointment and neatly dressed, she spoke normally, her thought processes were normal, and she was fully oriented as to person, place, situation, and time on both occasions. (*Id.*) In both reports, she is stated to have a restricted affect range and depressed mood. (Tr. at 411, 691.) Her cognitive functioning also produced comparable results in calculations, abstractions, judgment, general information, and memory. (*Id.*) In fact, in 2015 Dr. Thornton reached a diagnosis of an Estimated Average Range of Intellectual Functioning, whereas she had previously concluded in 2012 that Plaintiff had an Estimated Low Average Range of Intellectual Functioning. (*Id.*) Even

though Plaintiff's Estimated Average Range of Intellectual Functioning improved from 2012 to 2015, Dr. Thornton opined that Plaintiff was now unable to make appropriate work decisions. (Tr. at 691.) Dr. Thornton provided no explanation for the change in determination that Plaintiff was, in 2015, unable to make appropriate work decisions even though her intellectual functioning had improved. (*Id.*) There is no indication of a decline in functioning on either of Dr. Thornton's reports that warrant changing her conclusion in judgment from "would be able to make appropriate work decisions" in 2012 to "would not be able to make appropriate work decisions" in 2015. Therefore, the ALJ properly concluded that Dr. Thornton's 2015 findings were not properly supported by her own previous determinations.

The ALJ also stated that Dr. Thornton's 2015 findings were inconsistent with other longitudinal medical evidence. (Tr. at 26.) *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Plaintiff visited the Quality of Life Clinic several times, with her first visit on August 17, 2012, and her last visit on May 3, 2017. (Tr. at 430-97, 514-676, 705-71.) The reasons for these visits varied and were not always for a psychological evaluation. (*Id.*) The psychiatric examinations at Quality of Life generally showed Plaintiff had an appropriate mood and affect, and she typically displayed good concentration, judgment and insight, and had no memory loss. (Tr. 26, 432, 443, 456, 529, 533, 538, 541, 547, 550, 556, 580, 585, 589, 592, 594, 596, 598, 601, 604,

606, 608, 611, 614, 616, 718, 739, 746-47, 754, 768.)   Plaintiff reported stress, depression, and anxiety when she encountered situational stressors.  For example, when Plaintiff dealt with two of her children that wouldn't work and kept coming back home, she reported feeling anxious, had inappropriate mood and affect, and exhibited signs of depression, compulsive behavior, and mood swings.  (Tr. at 529.)

One of Plaintiff's visits to the Quality of Life Clinic occurred on September 17, 2015 – about three months after her second visit with Dr. Thornton.  (Tr. at 757.) During this visit, the clinic reached the conclusion that Plaintiff's psychiatric orientation was normal – she was oriented to time, place, person, and situation, with normal insight and judgment.  (Tr. at 762.)  Later, on June 21, 2016 and October 12, 2016, Plaintiff's neurological and psychiatric evaluations were determined to be completely normal in terms of memory and orientation.  (Tr. at 725, 732.)  The Quality of Life records show no significant changes to Plaintiff's psychiatric evaluations that would support Dr. Thornton's change in judgment that occurred from 2012 to 2015.

Further, the ALJ concluded that Dr. Thornton's 2015 findings were inconsistent with Plaintiff's reports of daily activities.  (Tr. at 26-27, 691.)  At the 2015 visit with Dr. Thornton, Plaintiff stated that her daily activities included laundry, making beds, cooking (with help), and paying the family bills.  (Tr. at 690.)

She also drove and managed most of her self-care tasks on her own.  (*Id.*)  However, Dr. Thornton opined that Plaintiff was "unable to work due to a combination of her depression and physical issues."  (Tr. at 691.)  Dr. Thornton's opinion that Plaintiff was unable to work due to physical issues contradicts Plaintiff's report of her daily activities.  *See T.R.C. ex rel. Boyd v. Commr. Soc. Sec. Admin.*, 553 F. App'x 914, 917 (11th Cir. 2014) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (holding that the ALJ is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion)).  Therefore, the ALJ was reasonable to assign little weight to Dr. Thornton's findings because Plaintiff's reports of daily activities supported a different conclusion than Dr. Thornton reached in 2015.

Substantial evidence supports the ALJ's assigning little weight to Dr. Thornton's 2015 findings.  The ALJ's conclusion was adequately supported by evidence in the record. Dr. Thornton's 2015 determinations were inconsistent with her own previous findings, longitudinal medical evidence, and Plaintiff's reports of daily activities.  Therefore, the ALJ did not substitute her own opinion for that of a medical expert when determining Plaintiff's RFC.  Rather, she weighed the conflicting evidence and made the proper findings that are reserved for the Commissioner.  *See* 20 C.F.R. § 416.927(d)(2) ("While the Commissioner will consider opinions from medical sources, the final responsibility for deciding the issue

of a claimant's RFC is reserved to the Commissioner").   In order to resolve conflicting medical evidence, the ALJ appropriately decided to give differing weights to Dr. Thornton's findings.  *See* 20 C.F.R. § 416.927(d)(2). The ALJ cited proper reasons supported by substantial evidence for partially crediting Dr. Thornton's 2012 opinion but not her 2015 opinion.

### B.   Credibility Determination

A claimant's subjective complaints alone are insufficient to establish disability.  *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). A claimant has the burden of providing sufficient evidence to support her allegations of disabling pain or other symptoms.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a)-(c), 404.1529(a), 416.912(a)-(c), 416.929(a). When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms.  *See* 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b); Social Security Ruling ("SSR") 16-3p; *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).  If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes she has an impairment that

could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c), (d); 416.929 (c), (d); SSR 16-3p; *Wilson*, 284 F.3d at 1225-26. In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Plaintiff testified on July 24, 2017, that she could not work because of her depression and anxiety. (Tr. at 57.) She stated that, following a car wreck with her husband in 2009, she could no longer handle working as a CNA. (Tr. at 59.) Plaintiff also testified that she suffers the most pain in her back and suffers from pain in her left elbow, left hip, and her right ankle. (Tr. at 60.) She stated that she could only stand for 10 minutes, sit for 20-25 minutes, and carry four to five pounds. (*Id.*) Regarding household duties, she stated that she does not cook and tries to clean the house while seated in an office chair. (Tr. at 61.) Plaintiff also testified that she has attempted to commit suicide twice by taking pills. (Tr. at 63-64.)

Substantial evidence supports the ALJ's determination that Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of

her alleged pain and other symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (Tr. at 23.) The ALJ first acknowledged that regarding Plaintiff's anxiety and depression, the objective evidence in the record showed that she had been in therapy and was making routine progress from August 17, 2012 to May 3, 2017 with Dave Harvey, a licensed clinical social worker.  (Tr. at 430-97, 514-676, 705-71.)  The ALJ also noted that Plaintiff's depression and anxiety were predominately related to the stressors of raising her sons at the time.  (Tr. at 26, 529, 541, 550.)  The record also shows that Plaintiff consistently reported to doctors that she did not have suicidal ideation, while her testimony at her hearing stated otherwise.  (Tr. at 493, 496, 529, 541-42, 638.)  The Plaintiff was also never hospitalized for mental health problems.

Additionally, the ALJ explained that the medical evidence of record did not support Plaintiff's allegations regarding the limitations caused by her physical impairments.  (Tr. at 23-24, 430-49, 516-676, 693, 695-97, 711, 718, 725, 732, 739, 746-47, 754, 768).  *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (objective medical evidence is relevant in subjective symptom evaluation).  Dr. Al Vester, a physical consultative examiner, conducted a full Medical Examination on August 10, 2015, stating that Plaintiff was only moderately limited by her injury to her right shoulder, mildly limited by her injury to her left elbow, moderately limited by her

problems with her right ankle, and mildly limited by her obesity. (Tr. at 703.) Dr. Vester stated that he would not consider her significantly limited to sit. However, he found Plaintiff was moderately limited to stand, walk, lift, and carry items, moderately limited to handle objects with her right arm, mildly limited to hold objects with her left arm, not limited to hear or speak, and moderately limited to travel. (*Id.*) The ALJ gave great weight to Dr. Vester's opinion because it was consistent with the longitudinal medical evidence. (Tr. at 25, 700-04.)

Also, in her visit with Dr. Thornton in 2012, Plaintiff stated her daily activities included childcare, tidying and straightening their house, cooking with help from her sons, and helping them do homework. (Tr. at 410.) She also stated that she was able to drive and take care of her own personal hygiene, except shaving. (*Id.*) During her visit with Dr. Thornton in 2015, Plaintiff reported her daily activities included laundry, making beds, cooking (with help), paying the bills, and driving. (Tr. at 690.) However, Plaintiff testified that she did not cook anymore, tried to clean the house but often had to stop and rest, and that overall, she struggled doing household chores. (Tr. at 61.) Therefore, while the ALJ agreed that the determinable impairments could reasonably cause the alleged symptoms, it was reasonable for the ALJ to conclude that there were several inconsistencies in Plaintiff's reports of her ailments in the record. (Tr. at 23.) *See* C.F.R. § 404.1529(c)(4) (noting that in evaluating a

claimant's subjective statements, consideration is also given to any conflicts between the claimant's statements and the rest of the evidence).

In sum, the ALJ articulated reasons in great detail for finding that Plaintiff's subjective complaints were inconsistent with the medical evidence of record. Substantial evidence supports the ALJ's determination to give little weight to Plaintiff's testimony.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on March 22, 2021.

_____
L. Scott Coogler
United States District Judge

160704